Nellie Greig, Plaintiff-Appellee, v. City of Park Ridge, a Municipal Corporation, Defendant-Appellant, and Bernard Bishop, d/b/a Bishop Tree and Landscape Service, Defendant.

Gen. No. 49,274.

First District, Third Division.

May 28, 1964.

Herbert R. Stoffels, of Park Ridge, and Tom L. Yates, of Chicago (L. J. Locke, of counsel), for appellant.

Dale, Haffner, Grow & Overgaard, of Chicago (Mitchell J. Overgaard, of counsel), for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by the City of Park Ridge from a judgment on a verdict for $6,000 for personal injuries sustained as the result of a fall which plaintiff charges was caused by a stump left by the city in a parkway. Defendant Bishop operates a tree and landscape service, and his services are used by the city to cut down dead and diseased trees. On April 10, 1961, Bishop cut down a tree, leaving the stump here in question. The removal of stumps involves the use of heavy machinery which is costly to put into operation and hence the city, which uses another contractor to remove stumps, calls him only after a substantial number have accumulated.

On May 3, 1961, about 4:30 in the afternoon, plaintiff, an 85-year-old woman, was being taken home by Mrs. Priscilla Buchan for whom she had been baby sitting. Mrs. Buchan drove west on Tuohy Avenue and stopped her car close to the curb on the north side of the street near the plaintiff's home. Mrs. Buchan had often left the plaintiff at that point and was aware that a tree had been cut down and a stump remained. From a photograph included in plaintiff's brief it is clear that the stump, about three feet in diameter, was located in the parkway about a foot or so from the Tuohy Avenue curb. As the tree had been cut at an angle, the stump protruded from the ground a few inches at one point and was almost flush with the grass at the point nearest the curb. When Mrs. Buch-

an, who did not see plaintiff fall, helped her up, the stump was to the rear, *behind* the door of the car from which plaintiff had emerged.

Plaintiff testified that she knew Mrs. Buchan was in a hurry to get home and so she proceeded to get out of the car as soon as Mrs. Buchan stopped. Her testimony as to what she did immediately thereafter is the crucial part of this case, and we therefore quote from it as follows: "I put the right foot down, and kept getting at the edge of the seat, and I couldn't get a hold, couldn't get my foot any further it just—it was soft dirt down there and I thought 'That isn't like it always is.'" Plaintiff then put her left foot out and, to quote again, "as it went down, I kind of clicked on a stone or a curb, or something, but there was nothing to it, it slid off and just went on. Then both toes were fastened right against something like that; well, then I stood up. . . . I pushed the car door clear open, and there was that great big stump. I never seen that stump there before in my life. . . . And when I saw that thing, I said to myself, 'I am going to hit it,' because I couldn't move my feet anywhere. . . . I couldn't look down at my feet to see what my toes were up against. . . . That old coat was swinging forward. . . . I never saw the ground or anything. All I could do was feel that soft dirt and the toes wouldn't go any further, neither one of them. So, I either had to fall—I had to fall because there was no place I could step. Then I fell down, fell clear across the stump."

On cross-examination she testified: "I couldn't see the ground at all. That coat [apparently referring to the coat she was wearing] was sticking up there, but I had done that so many times, I thought everything was all right." On deposition she testified: "My heel kind of felt the curb as I went down." Thereafter, she testified: "Of course, I had my big purse in

239

my hand and that kind of fuddled me up when I was holding on to the car door."

· Plaintiff alleged ordinary negligence and wilful and wanton conduct on the part of both the city and Bishop. The city's motion to strike the wilful and wanton charge and its motion for a directed verdict on that charge were denied. After the court denied these motions, the attorney for the city submitted prepared interrogatories. One of the interrogatories required the jury to answer whether the city was guilty of wilful and wanton conduct; another, whether defendant Bishop was guilty of wilful and wanton conduct; and a third, whether plaintiff was guilty of contributory negligence. The jury answered that the city was guilty of wilful and wanton conduct; that Bishop was not; and that plaintiff was free from contributory negligence. The jury found defendant Bishop not guilty and returned a general verdict against the city. The city's motions for judgment notwithstanding the verdict and for a new trial were denied.

██ The city contends that the submission of the wilful and wanton charge to the jury was error. Illinois Pattern Jury Instruction No. 14.01, used in the case, defines wilful and wanton conduct as the "course of conduct which shows an utter indifference to or a conscious disregard for the safety of others." While a municipality is required to maintain its streets and sidewalks, including parkways, in a reasonably safe condition considering the use to be made of such area (Arvidson v. City of Elmhurst, 11 Ill2d 601, 145 NE 2d 105), no cases have been cited in the briefs, and a search of the authorities has not revealed any case in Illinois which has held a municipality guilty of wilful and wanton conduct. We do not conclude from this that a municipality cannot be guilty of wilful and wanton conduct, but apparently it would be an extraordinary case.

Plaintiff argues that an injury sustained as the result of direct, positive conscious action by a municipality through its officers and agents, as opposed to an injury sustained as the result of damage or deterioration caused by agencies not under its control (presumably such conditions as ice, snow, water, wind, fire, etc.) is more likely to be the result of wilful and wanton conduct of the municipality. While this may be true, the distinction of itself is not sufficient to show an utter indifference to or a conscious disregard for the safety of others. Tree cutting and trimming was undertaken for the safety of passing motorists and pedestrians. It was intended to protect them against overaged and diseased trees from which branches might fall. The tree involved was not located at an intersection, but was in the middle of a parkway where trees and therefore stumps normally stand and where the flow of pedestrian traffic is slight. The city's explanation as to why the stump was not removed immediately and why it was permitted to remain for about three weeks is reasonable and plausible. The evidence does not reveal that the city was utterly indifferent to or had a conscious disregard for the safety of others. There was no basis for the submission of the wilful and wanton charge to the jury.

Plaintiff argues that the city is bound by the jury's special finding of fact concerning its wilful and wanton conduct because the city did not specifically object in the form of a motion for a new trial or a motion to set aside the special finding of fact (Hilyard v. Duncan, 21 Ill App2d 514, 158 NE2d 438; Kotowsky v. Cook, 29 Ill App2d 116, 172 NE2d 502; Rubottom v. Crane Co., 302 Ill App 58, 23 NE2d 354) and did not argue the error of the jury's special finding in its brief. Kotowsky v. Cook, supra.

241

The city in its post-trial motion said: "The verdict of the jury and the answers to the special interrogatories are wholly unsupported by the evidence and are the result of overpowering sympathy on the part of the jury toward the plaintiff." This was sufficient to identify for the trial court the nature of the city's objection to the jury's special finding of fact and is therefore sufficient to preserve the question for appeal. Plaintiff's reliance on Hilyard v. Duncan, supra, and Kotowsky v. Cook, supra, is misplaced, since in both cases there was no mention of the special interrogatory in the post-trial motion. The city in its points and authorities said: "The trial court erred in denying the defendant's motion for a new trial because: A. The case should not have been submitted to the jury on a wilful and wanton charge. B. The verdict was contrary to the manifest weight of the evidence." This was a sufficient compliance with the rules of this court.

It is impossible to say to what extent the jury was influenced by the charge of wilful and wanton conduct. Plaintiff's testimony is vague and rambling. It is difficult to find any evidence showing that she tripped over the stump. She told of her difficulty in alighting because of her coat and bag. From Mrs. Buchan's testimony, the tree stump was at the rear, behind the door from which plaintiff alighted. It is only the stringency of the rule with respect to directing a verdict which would permit the case to go to the jury on the negligence count.

In such a case it is important that there be no errors which might mislead the jury. The injection of the wilful and wanton issue was such an error. The answer to the interrogatory that defendant was guilty of wilful and wanton conduct reveals the jury's confusion and their understandable sympathy for this plaintiff, an 85-year-old woman, who testified honestly

242

how she had become mixed up with her coat and bag as she tried to get out of the automobile.

The judgment is reversed and the cause is remanded with directions to allow the motion for new trial, and for such other and further proceedings as are not inconsistent with the views hereinbefore expressed.

Judgment reversed and cause remanded with directions.

DEMPSEY and SULLIVAN, JJ., concur.