JOHN MARSHALL, a Minor, by Evelyn Marshall, his Mother and Next Friend, Plaintiff-Appellant, v. THE CITY OF CENTRALIA, Defendant-Appellee.

Fifth District    No. 5—87—0839

Opinion filed December 19, 1989.—Rehearing denied January 24, 1990.

Kujawski, Rosen & Faerber, of Belleville (Fritz G. Faerber, of counsel), for appellant.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Sarah Hansen Sotos, and Betty J. Glass, of counsel), for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On October 19, 1985, John Marshall, a minor, and no relationship to our first chief justice insofar as the record reflects, sustained an injury to his right knee when he fell in an open sewer manhole in the City of Centralia. The manhole was located at the intersection of Sycamore and McCord on the west side of Sycamore and approximately two feet north of McCord. The plaintiff was walking east on the sidewalk on the north side of McCord towards Sycamore, which is a north-south street. As he approached the intersection, he noticed that on the far side of Sycamore, his projected path of travel, the sidewalk was covered with mud. Being unwilling to subject his red Ponys to such conditions, he decided to skirt the muddy area by moving from

the sidewalk into the street. Although the record does not reflect the entire course of study being followed by young John, we may safely assume that Euclid and/or his good friend, Pythagoras, will play some part in his studies, because he chose a hypotenusal path to accomplish his goal of mud-avoidance. He moved diagonally from the sidewalk across the short span of grass, and as he was almost ready to step into the street, his right foot went into an open manhole, therefore thwarting both his ability to keep his red Ponys clean and injuring his right knee.

The injury in this case occurred not on the roadway, but in the parkway owned by the defendant. Although there is some confusion in the record as to the directions and locations, the following rough diagram is an approximation of the locations of the streets, the manhole and the plaintiff's originally intended direct path and the alternate route he took to avoid the muddy sidewalk.

Suit was brought by his mother and next friend and the amended complaint alleged:

"4. That at the above-mentioned time and place, because of a defect in the sidewalk, the plaintiff was required to deviate from the sidewalk and walk upon a grassy area, and thereby fell by slipping and falling into an open sewer manhole at the curb sustaining serious and permanent injuries as will hereinafter be more fully alleged.

5. That at the above-mentioned time and place, the defendant, by and through its agents, servants and employees, com-

mitted one or more of the following negligent acts and/or omissions:

(a) that the defendant negligently failed to maintain its curbs and sewer manholes;

(b) that the defendant negligently failed to repair the sewer manhole covers;

(c) that the defendant failed to periodically inspect and repair its broken and/or misplaced sewer manhole covers;

(d) that the defendant failed to keep its sidewalks, walkways, curbs and streets in a reasonably good condition for use by the plaintiff and other pedestrians;

(e) that the defendant failed to warn the plaintiff of the defective sidewalk, walkway, street, curb and/or open sewer manhole cover;

6. That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the defendant, plaintiff was injured when he fell as a result of having to cross the street because of a defective sidewalk, walkway, curb and street, and manhole cover's disrepair."

Discovery was conducted, and the trial court had various pleadings, statements, and the plaintiff's deposition before it at the time that it ruled upon the defendant's motion for summary judgment.

These materials reflected that the plates covering the sewer manholes had on occasion been removed by children in the neighborhood and that their removal had been reported to the appropriate authorities of the defendant, but nothing had ever been done about it. In addition, the defendant had employees cleaning sewer drains on October 14, 1985, and October 15, 1985, but the defendant had no records as to the exact location where the employees had been working or as to which drains had been cleaned. The sewer manhole into which plaintiff fell was on Sycamore about two feet north of McCord. The plaintiff had seen the sewer drain before the accident, but it had always had the cover on it. At the time of the accident the curb area where the plaintiff fell was covered with autumn leaves. As the plaintiff walked across the grass between the sidewalk and curb, he stepped into the leaves in the curb area and his right leg went into the open hole. At the time of the accident the plaintiff had not yet entered the street.

The manhole was on the curb of Sycamore Street at the northwest corner of the intersection. The plaintiff was about 10 to 15 feet from Sycamore Street when he first noticed the mud on the other side of Sycamore. He described the muddy condition of the sidewalk

east of Sycamore as being "enough to get it on the bottom of your feet," but not enough to cover the entire width of the sidewalk. There were "bald spots" on the sidewalk east of Sycamore, but they were not sufficient to leave a path big enough to walk through. The "high spots" of the sidewalk were clear. The plaintiff described the mud spots as "little layers of mud which were about two to three feet long" and "about a foot wide." He guessed that there were three to four such mud spots between Sycamore's eastern curb and his friend's house, his destination, located almost a block east of Sycamore Street.

Based on the facts described above the trial court held that there was no genuine issue of material fact and that as a matter of law the defendant could not be liable to the plaintiffs. The presiding judge concluded that the city owed no duty to maintain its sewer drains and curbs in a condition reasonably safe for use by pedestrians inasmuch as the plaintiff was not an intended user of this type of municipal property. The trial court entered summary judgment for the defendant, and the plaintiff has appealed.

The defendant argues that the plaintiff in this case is essentially a jaywalker and that the city owes him no duty, citing *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357, and *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590. The city also relies upon *Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 478 N.E.2d 888, for the proposition that a municipality owes no duty to a jogger who is utilizing the road surface. Finally, and closest factually to the instant case, the city relies upon *Householder v. City of Bunker Hill* (1988), 172 Ill. App. 3d 1037, 527 N.E.2d 528, which upheld that trial court's dismissal of a complaint seeking recovery for injuries sustained by a plaintiff who stepped into an open manhole while pushing her car on the defendant's street.

Based on these cases, the defendant argues that the trial court was correct in finding that plaintiff's use of the parkway was not an intended use of that area and the city owes no duty to one who voluntarily deviates from the sidewalk. Plaintiff's deposition testimony and his amended complaint, however, state that he was required to leave the sidewalk to avoid the muddy conditions on Sycamore Street. Plaintiff argues that this situation brings this case within the purview of *Johnson v. City of Rockford* (1962), 35 Ill. App. 2d 107, 182 N.E.2d 240, *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 392 N.E.2d 716, and *City of Beardstown v. Smith* (1894), 150 Ill. 169, 37 N.E. 211.

In *Johnson* the plaintiff claimed that the defendant had allowed a sidewalk to be obstructed by ice and snow for a distance of 100 feet, which forced him to walk in the street where he was struck by a car. The trial court dismissed the complaint, and the appellate court reversed, holding:

"Applying these principles to the allegations of the amended complaint, we conclude that a jury might reasonably find that defendants could have reasonably foreseen the injuries to the plaintiff as a natural and probable result of their negligence. It is not necessary that the defendants should have reasonably foreseen the precise injury which resulted; it is enough if the exercise of reasonable foresight would have warned the defendants of the danger to pedestrians in obstructing a sidewalk with a bank of snow and ice for a distance of 100 feet." *Johnson*, 35 Ill. App. 2d at 119, 182 N.E.2d at 246.

In *Thorsen* the court affirmed the jury verdict against the city based on the plaintiff's claim that he was struck by a drunk driver after he was forced to walk in the street because the city had removed the sidewalk to install a water main. In *City of Beardstown v. Smith* the plaintiff fell into an open ditch or drain that was actually located in the street area. While no actual sidewalk was present, the plaintiff was on a path beaten down by pedestrian use when she fell.

While we agree that the facts of this case might arguably bring it within the holdings of *Johnson* and *Thorsen*, we need not decide whether those cases are controlling here. Instead we find that the cases cited by the defendant (*Risner*, 150 Ill. App. 3d 827, 502 N.E.2d 357; *Deren*, 13 Ill. App. 3d 473, 300 N.E.2d 590; *Eddings*, 135 Ill. App. 3d 190, 478 N.E.2d 888; *Householder*, 172 Ill. App. 3d 1037, 527 N.E.2d 528) are distinguishable on the basis that the injuries occurred in the street or roadway area, and the courts held that no duty existed to keep *roadways* reasonably safe for pedestrian traffic.

■ In this case the manhole extended from the grassy, leaf-covered parkway in the curb on the west side of Sycamore approximately two feet north of McCord. It would appear to be almost at the point of the corner and approximately three feet south of the south edge of the sidewalk. A city has a duty to maintain its streets and sidewalks, including its parkways, in a reasonably safe condition considering the intended use of such areas. *Greig v. City of Park Ridge* (1964), 49 Ill. App. 2d 237, 240, 199 N.E.2d 609, 610-11; *Pinto v. DeMunnick* (1988), 168 Ill. App. 3d 771, 523 N.E.2d 47, *appeal allowed* (1988), 122 Ill. 2d 593, 530 N.E.2d 263.

■ We hold that the city has a duty to cover open sewer drains

located in a parkway at a corner in a residential area. Therefore the summary judgment in defendant's favor is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

HOWERTON and RARICK, JJ., concur.