EVELYN WOJDYLA, Indiv. and as Adm'x of the Estate of Eugene Wojdyla, Deceased, Plaintiff-Appellant, v. THE CITY OF PARK RIDGE *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—90—0444

Opinion filed January 18, 1991.—Rehearing denied February 26, 1991.

EGAN, J., dissenting.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Leslie J. Rosen, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John T. Coleman, Robert W. Smith, Jr., Michael A. Pollard, and Maureen J. McGinnis, of counsel), for appellee City of Park Ridge.

Lord, Bissell & Brook, of Chicago (Evan A. Burkholder, Hugh C. Griffin, L. Anthony Lehr, and Diane I. Jennings, of counsel), for appellee Commonwealth Edison Company.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff-appellant Evelyn Wojdyla, individually and as administratrix of the estate of Eugene Wojdyla, brought a nine-count complaint against defendants-appellees, City of Park Ridge (City) and Commonwealth Edison, alleging various theories of negligence. The trial court granted defendants' motions for summary judgment. The issue is whether the City owed plaintiff's decedent a duty to adequately light the area where the decedent crossed Busse Highway, pursuant to either the common law, the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1975, ch. 85, pars. 3—102(a), 3—103(a), 3—104(b)) or its agreement with the Illinois Department of Transportation (IDOT). We affirm.

At about 5 p.m. on December 29, 1976, plaintiff's decedent Eugene Wojdyla was a pedestrian crossing Busse Highway in Park Ridge, Illinois. Busse Highway, at the point the decedent was crossing, was a six-lane thoroughfare which is lined with commercial buildings and residential dwellings. Parking is allowed on both sides of the street, and, in fact, Wojdyla was walking to his parked car when he was struck by an automobile.

Busse Highway was lighted on one side of the street by mercury vapor lamps which were placed some 325 feet apart. At the point where Wojdyla crossed, there was no pedestrian crosswalk, and the closest crosswalks were located about a half-mile away. There were no stop signs, yield signs or traffic lights in the vicinity. The speed limit was 40 miles per hour.

At the time, Bruce Miller was driving his automobile in a southerly direction along Busse Highway. It was dark, and the streetlights were on. Miller's automobile struck plaintiff's decedent, who allegedly died as a result of the accident several years after the accident.

In 1976, the City was a signatory to an agreement with IDOT. The agreement provided that the City was to "operate and maintain" the streets covered by the agreement "in the best interests of the people of the State of Illinois." The City was, by this agreement, charged with operating and maintaining "appurtenances" to the highway, which included the street lighting. Defendant Commonwealth

Edison provided the street lighting along Busse Highway. Plaintiff has conceded that if we find that the City did not owe her decedent a duty in this case, then Commonwealth Edison owed no duty either.

■ In a cause of action alleging negligence, the plaintiff must establish the existence of a duty, a breach of that duty and an injury proximately resulting from the breach of the duty. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18, 440 N.E.2d 96.) The question of the existence of a duty is a question of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 96.) A motion for summary judgment, as defendants presented in this case, properly addresses an issue of duty. *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 431, 495 N.E.2d 1295.

■ Section 3—102(a) of the Tort Immunity Act explains the City's duty to maintain its property:

"[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***[.]" (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).)

A municipality has a duty to reasonably maintain its streets for vehicular traffic (*Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215) and to reasonably maintain its crosswalks for pedestrians (see *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572; *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357).

In a variety of factual contexts, the Illinois Appellate Court has considered whether municipalities owe a duty to pedestrians who cross streets or highways at locations other than crosswalks. In *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590, the plaintiff alleged that he was struck by an automobile while walking in the street, that the city knew that many pedestrians used the street due to the lack of a sidewalk, and that the city owed the pedestrians a duty to maintain a safe sidewalk for pedestrians. The court stated that "the liability of a municipality with respect to its public streets is limited to their use as streets." (*Deren*, 13 Ill. App. 3d at 477.) The court further observed that it was "not prepared to create a general duty upon municipalities for the safeguarding of pedestrians when they are walking on public streets." *Deren*, 13 Ill. App. 3d at 478.

In *Risner*, the plaintiff was struck by a bus as he attempted to cross a heavily travelled street in the middle of the block and in an

area where there was no crosswalk provided. The court held that "plaintiff was not an intended or permitted user of defendant's street, using it in a manner it was reasonably foreseeable it would be used; the street is for *use* by vehicular traffic—not pedestrians, except where defendant has provided crosswalks or the like." (Emphasis in original.) *Risner*, 150 Ill. App. 3d at 831.

In *Mason*, the plaintiff was crossing the street in the middle of the block to reach her car parked across the street and fell into a hole in the street. The court observed:

> "[T]he City owes no duty to warn pedestrians not using the crosswalk of any hazards outside of the crosswalk. The law imposes no general duty on municipalities for the safeguarding of pedestrians when they are using public streets as walkways. *** The law is well settled, therefore, that a municipality owes no duty to a pedestrian crossing a public street outside of the crosswalk." *Mason*, 173 Ill. App. 3d at 331-32.

In *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, 525 N.E.2d 242, plaintiff fell into a hole in the street while approaching the trunk of his legally, curb-side parked car. In response to the contention that the defendant-village intended that the streets, crosswalks excepted, should be maintained only for vehicular traffic, the court stated:

> "It defies common sense to conclude that such local entities did not contemplate and intend that the operator of the vehicle along with passengers would use the street area around the parked vehicle for ingress and egress to and from their vehicle." (*Di Domenico*, 171 Ill. App. 3d at 295-96.)

The *Di Domenico* court concluded that plaintiff, legally parked, could maintain a cause of action for negligence. *Di Domenico*, 171 Ill. App. 3d at 296-97.

Recently, in *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911, 556 N.E.2d 660, plaintiff also stepped into a hole while getting into his illegally double parked vehicle in an area that was not a crosswalk. The court chose to follow the reasoning of *Mason* in affirming defendant-city's motion for summary judgment. (*Vlahos*, 198 Ill. App. 3d at 914.) Most recently, in *Princivalli v. City of Chicago* (1990), 202 Ill. App. 3d 525, the court held that the granting of defendant's motion for summary judgment was error where plaintiff stepped into a hole while crossing the street and walking from her legally parked vehicle. The court ruled as it did due to defendant's failure to establish whether plaintiff was not an intended and permitted user of the street. (*Princivalli*, 202 Ill. App. 3d at 528.) The *Princivalli* opinion

does not indicate whether the plaintiff was in a crosswalk or precisely where plaintiff received her injury in relation to her legally parked car.

■ In support of plaintiff's argument that the City owed her decedent a duty in this case, plaintiff asserts that *"Di Domenico* is similar to this case," as the decedent, "like the plaintiff in *Di Domenico*," was using the street as a pathway to his automobile and had no alternate route available to him. The facts of this case, however, are more like *Mason* than *Di Domenico*. In the latter case, plaintiff was walking to the trunk of his car and fell into a hole only "a few feet from plaintiff's vehicle." (*Di Domenico*, 171 Ill. App. 3d at 294.) The court in *Di Domenico* addressed the situation where pedestrians use the "street area around the parked vehicle for ingress and egress to and from their [parked] vehicle." (*Di Domenico*, 171 Ill. App. 3d at 295-96.) In this case, plaintiff's decedent was struck in a center lane of a six-lane highway. The decedent, like the plaintiff in *Mason*, was crossing the street, not in a crosswalk, attempting to reach his car on the other side of the street. Thus, because *Mason* is on point, we need not discuss the consequences of the duty *Di Domenico* imposes. The result which obtains is that plaintiff's decedent was not an intended and permitted user of the street at the time of the occurrence.

Nor does the fact that Eugene Wojdyla's use of Busse Highway in such a manner may have been "foreseeable" compel a different result. Pursuant to the language of the Tort Immunity Act, foreseeability "pertains to *use* of the municipality's property by permitted and intended users, *not to foreseeable users \*\*\* 'in a manner \*\*\* it was reasonably foreseeable it would be used.'* " (Emphasis in original.) (*Risner*, 150 Ill. App. 3d at 831.) Here, plaintiff argues that there were residential and commercial buildings along the highway, parking was permitted by the City, and there was no pedestrian crosswalk within one-half mile at the point plaintiff's decedent attempted to cross. Such a description, of course, applies to an infinite number of spots along the Illinois highway system. It is presumably known by municipalities, as it is known by the courts, that pedestrians cross the roads at such spots. Yet, at the time of the accident, plaintiff's decedent was not an intended and permitted user of the street and was thus not owed a duty regardless of whether such use of the street was in some sense "foreseeable."

Plaintiff also argues that by voluntarily undertaking to provide lighting on Busse Highway, the city owed her decedent the duty of reasonable care in providing the lighting. In support of this argument, plaintiff cites *Baran v. City of Chicago* (1969), 43 Ill. 2d 177, 251

N.E.2d 227, and *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205. In *Baran*, the plaintiff drove past the end of a street with a "T" intersection and crashed into a tree. The plaintiff contended that the streetlight was on the wrong corner, causing the intersection to be improperly illuminated. The Illinois Supreme Court stated "[t]he court has long recognized that where a city undertakes to provide lights, it is liable for injuries which result from deficient or inadequate ones." *Baran*, 43 Ill. 2d at 180.

In *Greene*, the supreme court held that the defendant-city was liable to a motorist-plaintiff who was struck by another motorist while he stood behind his automobile on a street where the light was out, after his automobile had stalled and come to a stop. The court affirmed the principle that where a municipality undertakes to protect a street by lighting, it is liable for its negligence in carrying out that plan. *Greene*, 73 Ill. 2d at 108-09.

*Baran* and *Greene*, however, do not support the position of plaintiff for the reason that the plaintiffs in those cases were motorists to whom the municipality owed a duty. (See *Crutchfield v. Yellow Cab Co.* (1989), 189 Ill. App. 3d 1091, 1097, 545 N.E.2d 1091; *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 94, 523 N.E.2d 594.) Here, plaintiff's decedent was not a motorist to whom a duty was owed, but rather was a pedestrian using the street as a walkway to his vehicle. Such use of the street does not serve to convert the street into a sidewalk or crosswalk so as to give rise to a duty on the part of the governmental unit toward plaintiff's decedent.

Plaintiff also relies on the case of *Thorson v. City of Chicago* (1979), 74 Ill. App. 3d 98, 392 N.E.2d 716. *Thorson* involved a plaintiff who was struck by a car which swerved across the center lane. Plaintiff was walking in the street at the time because the city had torn up and removed the sidewalk on both sides of the street. The issue in *Thorson* was "whether the City owed a duty to maintain a sidewalk or provide a safe means of pedestrian travel." (*Thorson*, 74 Ill. App. 3d at 106.) The court concluded "having once provided a sidewalk, the City thereafter had a duty to maintain it or otherwise provide a safe place to walk, or else give notice to the public that the street was closed to pedestrian traffic." (*Thorson*, 74 Ill. App. 3d at 107.) Plaintiff's decedent in this case, unlike the plaintiff in *Thorson*, had never benefitted from the city's providing any protection, as the city's duty to provide adequate illumination runs only to the intended and permitted users of the street.

In *Swett*, the plaintiff alleged that the defendant-municipality was negligent in, among other allegations, lighting a roadway plaintiff's

decedent was walking across. The decedent in *Swett* was struck by an automobile, traversing the street from a parking lot to a business establishment. The *Swett* court rejected the contention that a duty was owed by the city to the pedestrians, despite the allegations that pedestrian use of the street was intended by the municipality. (*Swett,* 169 Ill. App. 3d at 93-95.) We find *Swett* to be further authority which supports the conclusion that there was no duty owed in this case.

■ Plaintiff's attempt to impose liability by virtue of sections 3—103 and 3—104 of the Tort Immunity Act must fail as well. These provisions, dealing with nonliability for the adoption of plans and for the failure to provide traffic devices, do not create duties either independent of or in addition to the duty which exists under section 3—102(a) of the Tort Immunity Act. As we have found no duty under the latter section, no obligation or duty is created by the former sections. See *Curtis,* 98 Ill. 2d at 165; *Swett,* 169 Ill. App. 3d at 95-96; *Risner,* 150 Ill. App. 3d at 832.

■ Finally, plaintiff contends that the City assumed a duty to adequately light the highway for the benefit of her decedent when the City agreed with IDOT to maintain the street "in the best interests of the people of the State of Illinois." Plaintiff advances no case law or other authority to support the proposition that an agreement of this type would impose a duty owed to the decedent where no duty exists at the common law. The agreement says nothing about the city agreeing to provide lighting on Busse Highway for the benefit of pedestrians, and we hold that no duty should run based solely on the IDOT agreement.

At oral argument, plaintiff repeatedly argued that the absence of pedestrian crosswalks in the vicinity should not be used to "negate the City's duty" to her decedent. Also at oral argument, plaintiff assured us that liability is not sought for the City's failure to provide a crosswalk. Plaintiff argued that if the City had provided a crosswalk in the vicinity, and her decedent was struck by the vehicle only a few feet outside of the crosswalk, the City should still be liable.

Distilled to its finest, then, it is apparent that plaintiff's argument is that municipalities have a duty to adequately light all such streets and highways, for the benefit of pedestrians, at every point where parking is allowed. However, given the absence of a legal basis for a duty owed plaintiff's decedent in this case, we are disinclined to create one. It is well settled that foreseeability alone does not govern the determination of whether a duty is owed. As our supreme court observed in *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231: "The likelihood of injury, the magnitude of the burden of guarding

against it and the consequences of placing that burden upon the defendant, must also be taken into account." The magnitude of municipalities' burden to guarantee the safety of pedestrians at all such points on all similar streets and highways, and the costs which would accompany such efforts, are tremendous, and we therefore refuse to impose such a duty upon municipalities.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LaPORTA, J., concurs.

JUSTICE EGAN, dissenting:

The issue in this case is whether the plaintiff, as a matter of law, was one of the persons "whom the [City] intended and permitted to use the [street] in a manner in which and at such times as it was reasonably foreseeable [to the City] that it would be used." (Ill. Rev. Stat. 1975, ch. 85, par. 3—102(a).) The majority hold, as a matter of law, that the plaintiff was not one of those persons. I disagree; and I do so with the awareness that the greater precedential weight, but not all of it, lies on the majority side of the scale. But I respectfully disagree with the holdings of some of the cases, all appellate court opinions, cited by the majority: *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590; *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 523 N.E.2d 594; and *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911, 556 N.E.2d 660. I also disagree with another case, not cited by the parties or the majority, *Vance v. City of Chicago* (1990), 199 Ill. App. 3d 652, 557 N.E.2d 494. Other cases cited by the majority may be distinguished: *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357; *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572; and *Crutchfield v. Yellow Cab Co.* (1989), 189 Ill. App. 3d 1091, 545 N.E.2d 961.

First, the essential facts: This accident occurred on December 29, 1976; the closest crosswalk was one-half mile away. The decedent had lawfully parked his car on one side of the street and had crossed to the other side. He was fatally injured when he was recrossing the street to his car. The City breached its duty to adequately light the area where the decedent crossed Busse Highway; the inadequate lighting was a proximate cause of the injury; and the inadequate lighting had existed for a sufficient time to place the City on notice. Last, the agreed law: A municipality has no duty to provide any crosswalks

(*Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 495 N.E.2d 1259) or lighting (*Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 251 N.E.2d 227). But if a municipality does undertake such improvements, it is liable for injuries which result from deficient or inadequate ones. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205.) The majority concede, under these facts and the law, that the City owed a duty to provide adequate lighting, but only to motorists or pedestrians in a marked crosswalk or in certain very limited areas which will be discussed later.

The earliest case on this question (and relied on by most of the subsequent cases cited by the City) is *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590. The plaintiff was struck by a hit-and-run automobile while he was walking along a street. He maintained that the City was negligent, in part, for failure to provide walkways and to provide adequate street lighting. The majority of the Fourth District Appellate Court held that the City owed no duty to a pedestrian in the exercise of its control over the street. The court distinguished the use of the street by a motorist, a permitted user, and a pedestrian. The dissenting opinion disagreed with the conclusion of the majority that the street was "designed and built solely for vehicular traffic." The dissent added the following observation:

> " '*** When highways are not restricted by their dedication or statute to some particular mode of use they are open to all suitable methods of travel. A street is made for the passage of *persons* and property, and the law cannot define what exclusive means of transportation and passage shall be used.' *Molway v. City of Chicago*, 239 Ill. 486 at 490." (Emphasis added.) 13 Ill. App. 3d at 478 (Moran, P.J., dissenting).

I agree with the dissent that the supreme court in *Molway* rejected any argument that a street is designed and built solely for vehicular traffic. In that case, the plaintiff, a bicycle rider, was injured when he rode into a hole in the street. The City assigned as error the refusal to instruct the jury that "ordinary travel does not include the use of a street by one riding a bicycle thereon." (*Molway v. City of Chicago* (1909), 239 Ill. 486, 488.) The appellate court affirmed the trial court and was in turn affirmed by the supreme court. The supreme court rejected the argument "that to make the highways or streets reasonably safe for bicyclists using reasonable care would impose more onerous duties upon municipalities than to keep them in repair for *pedestrians* or horse-drawn vehicles." (Emphasis added.) (239 Ill. at 490.) Apparently, it was a given that pedestrians were permitted users of the streets.

At this point I wish to make it clear that I do not maintain that a municipality may not appropriately circumscribe areas to be used by pedestrians. To illustrate, in our recent decision in *Prokes v. City of Chicago* (1991), 208 Ill. App. 3d 748, we held that the City of Chicago owed no duty to the plaintiff for injuries suffered while riding a bicycle on a sidewalk, contrary to an ordinance. We reasoned that a person in violation of an ordinance could not be considered a permitted user under the statute. That same reasoning supports the distinction to be made in two other cases cited by the majority. In *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357, the First District Appellate Court affirmed an order of the circuit court granting the City of Chicago summary judgment. The plaintiff was struck by a Chicago Transit Authority bus as he stepped off a sidewalk curb and attempted to cross Adams Street in the middle of the block between State and Wabash Streets in Chicago, where neither crosswalk markings were painted nor any other traffic regulation signals existed. The appellate court identified the plaintiff as a "jaywalker." (150 Ill. App. 3d at 830.) Although the opinion does not expressly say so, the plaintiff was in violation of the Traffic Regulations of the Municipal Code of Chicago. Section 27—282(b) then provided that "[n]o pedestrian shall cross a roadway other than at a crosswalk in any business district." Similarly, in *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572, the plaintiff was injured while crossing a residential street in mid-block. The plaintiff conceded that she was a "jaywalker." I assume that she also was in violation of some part of the city ordinance.

The other case relied on by the majority, which may be distinguished, is *Crutchfield v. Yellow Cab Co.* (1989), 189 Ill. App. 3d 1091, 545 N.E.2d 961. In that case the decedent was killed after she left a Chicago Transit Authority bus and was struck by a Yellow Cab taxi when she was attempting to cross the street. The decedent's estate sued a number of defendants including Yellow Cab, the Chicago Transit Authority and the City. Yellow Cab filed third-party contribution actions against the Chicago Transit Authority and the City. The trial court granted summary judgment for the City and the Chicago Transit Authority on the estate's complaint and the third-party complaint. On the appeal the decedent's representative *conceded that no action for negligence could be stated against the City for failure to provide warnings, lighting, crosswalks, or sidewalks, where none previously existed,* for the safety of passengers concerning the bus stop involved. (189 Ill. App. 3d at 1096.) The appellate court identified the sole issue to be whether the location of the bus stop itself constituted negli-

gence. It was Yellow Cab, not the representative of the decedent, who argued that the City had a duty to refrain from placing the bus stop where it did. Consequently, I do not believe the issue in this case was decided by the appellate court in *Crutchfield*.

No purpose would be served to discuss in detail *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911, 556 N.E.2d 660, and *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 523 N.E.2d 594, also relied upon by the majority. Suffice it to say that *Vlahos*, in which the plaintiff was injured when walking to his illegally parked car, relied on *Risner* and *Mason*, and *Swett* relied on *Deren* and *Risner*. Respectfully, I disagree with their holdings.

The plaintiff has cited *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, 525 N.E.2d 242, in which the plaintiff was injured when he was walking to the trunk of his legally parked car and fell in a hole only "a few feet from plaintiff's vehicle." (*Di Domenico*, 171 Ill. App. 3d at 294.) The appellate court reversed a dismissal order and, in doing so, distinguished *Deren*. The court pointed out that in *Deren* the plaintiff was using the street as a sidewalk, while in *Di Domenico*, the plaintiff used the street as a passageway in order to get from his vehicle to the sidewalk and from the sidewalk to his vehicle. *Di Domenico*, it should be noted, was expressly not followed in *Vlahos* (198 Ill. App. 3d at 914). The majority seek to distinguish *Di Domenico* from this case because the decedent in this case was struck in the center lane of a six-lane highway. The majority then conclude that the plaintiff was like the plaintiff in *Mason*. In my judgment, the plaintiff in this case was not like the plaintiff in *Mason*. As noted, the plaintiff in *Mason* was an admitted "jaywalker" who, it is fair to assume, was in violation of a municipal ordinance.

The plaintiff also relies on two Illinois Supreme Court cases: *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 251 N.E.2d 227; and *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205. Both cases affirmed judgments for the plaintiff for failure of the municipality to provide adequate lighting. In *Baran* the plaintiff was injured when he crashed his automobile into a tree. In *Greene*, the plaintiff was struck while he was standing behind his stalled automobile on a street where the light was out. I agree with the majority that *Baran* is factually distinguishable, but I do not agree with the assertion of the majority that *Greene* involved the duty owed to a motorist. The plaintiff was not a motorist at the time of the injury. Thus, under *Greene*, if the decedent in this case had been struck while standing in the street behind his car and, under *Di Domenico*, he had been struck while on the street near the driver's door, the majority

concede that the City would owe him a duty. But, because he unfortunately was struck before he reached those positions of sanctuary, his cause of action must fall. In my judgment, such a result comes from an artificial factual distinction between this case and *Di Domenico* and *Greene*.

The latest case on this so-often recurring question is *Princivalli v. City of Chicago* (1990), 202 Ill. App. 3d 525, 559 N.E.2d 1190, which supports the plaintiff's position. I disagree with the majority's suggestion that the opinion does not establish the location of the plaintiff at the time she was injured with sufficient certainty. The plaintiff legally parked her car across the street from her home. She left the car, walked around to the rear and stepped off the curb to the street. "As she was crossing the street," she fell after stepping into a pothole. (202 Ill. App. 3d at 526.) She was crossing the street "in midblock outside of a crosswalk." (202 Ill. App. 3d at 527.)[1] The appellate court reversed summary judgment for the City and distinguished *Vlahos* (plaintiff was walking to his illegally double-parked truck); *Mason* (plaintiff admitted that she had been jaywalking); *Risner* (plaintiff had been jaywalking); and *Deren* (plaintiff was struck by a car while using the roadway as a sidewalk). If it may be said that a person who could have walked a half-block to cross the street may maintain an action, how can it be said that a person who would have had to walk a half-mile to cross a street may not?

The majority conclude that to impose liability on a municipality for injury to pedestrians in the street would be a "burden to guarantee the safety of pedestrians" and would require "tremendous" cost. This is, of course, an appealing argument—conjuring up the hobgoblin of a run on the public purse always is. It is the same argument that was raised and rejected in *Molway* 81 years ago (*Molway*, 239 Ill. at 490); it was raised to resist any change in the doctrine of sovereign immunity; and it was raised to resist the removal of the distinction between governmental and proprietary functions insofar as they related to municipal liability. It is also, in this case, factually invalid. Requiring adequate lighting no more "guarantees" the safety of pedestrians than it does the safety of motorists. The same lights paid for by the taxpayers shine on the pedestrians, motorcyclists, bicyclists and, of course, motorists with the same luminosity and the same fine impartiality. The law should too. Moreover, the pedestrian still must

---

[1]I have read the briefs in *Princivalli* which place the nearest crosswalk as a half-block from the scene of the accident. This is consistent with the appellate court's determination that the accident occurred "in mid-block."

prove a case. He must prove that the lighting was inadequate, that the inadequate condition existed for a sufficient period of time to provide notice to the municipality and to give the municipality an opportunity to correct it; and the pedestrian must also prove that the inadequate lighting was the proximate cause of the accident. In addition, the City does not surrender its right to raise the defense of contributory negligence.

Last, as I previously noted, there is nothing to prevent a municipality by ordinance to limit the use of its streets by pedestrians. For example, the Municipal Code of Chicago provides as follows:

> "Whenever, upon the basis of an engineering or traffic investigation upon any street, it is determined that pedestrian crossing between intersections shall be prohibited in the interest of public safety, pedestrians shall not cross between intersections except where there may be a marked crosswalk. *Such regulations against pedestrians crossing between intersections shall be effective when appropriate signs of giving notice thereof are erected.*" (Emphasis added.) Chicago Municipal Code §9—60—010(b) (1990).

Under the majority holding, the driver of the car that struck and allegedly caused the death of the decedent would have a cause of action against the City for property damage resulting from defective lighting, but the slain pedestrian's estate would not. To me, such a result would be manifestly unjust.

There are many municipalities, including the one in which I reside, that do not have sidewalks or crosswalks. Pedestrians are required to use the streets, even for retrieval of mail. I feel confident that all such pedestrians, when informed that a municipality's duty to provide the adequate lighting their taxes paid for extended only to vehicular traffic, would not simply dissent, they would protest in the strongest terms.

In sum, the decedent was legally parked one-half mile from a crosswalk. He was not in violation of any ordinance. In my judgment, he met the requirements of the supreme court's pronouncement in *Molway v. City of Chicago*. It is also my judgment that the City intended and permitted him to use the street in a manner and at such time as was reasonably foreseen by the City.

For these reasons, I dissent. I would reverse the order of the circuit court and remand the cause for further proceedings.