JUANITA RAMIREZ, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (6th Division)   No. 1—90—2347

Opinion filed April 5, 1991.

Burke & Burke, Ltd., of Chicago (John M. Burke and Thomas M. Lake, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff-appellant Juanita Ramirez filed this negligence action against defendant-appellant the City of Chicago (City) to recover damages plaintiff incurred while stepping onto a street. The trial court held that, pursuant to section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a)) (Tort Immunity Act), the City owed plaintiff no duty, and thus the trial court granted the City's motion for summary judgment. Plaintiff appeals the entry of summary judgment in favor of the City, contending that she was in fact the beneficiary of a duty of ordinary care. We affirm.

The facts of this case are relatively simple and are not in dispute. On June 4, 1988, plaintiff was injured while sweeping the curb portion of the street which was located in front of plaintiff's residence at 4828 South Paulina in Chicago. Specifically, plaintiff was sweeping debris which had collected in a sewer area. Plaintiff was cleaning the street in order to make it "look nice." When stepping from the curb to the street, plaintiff fell over a three-inch ridge in the street. Plaintiff's injury occurred in an area of the street which was outside of a crosswalk.

█ In a cause of action based on negligence, the plaintiff must establish the existence of a duty, a breach of that duty and an injury proximately resulting from a breach of that duty. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18, 440 N.E.2d 96.) The question of the existence of a duty is a question of law. (*Curtis v. County of Cook*

(1983), 98 Ill. 2d 158, 163, 456 N.E.2d 96.) A motion for summary judgment, as defendant presented in this case, properly addresses the issue of duty. *Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 431, 495 N.E.2d 1295.

■ Section 3—102(a) of the Tort Immunity Act sets forth a municipality's general property-related duty:

"[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used[.]" (Ill. Rev. Stat. 1987, ch. 85, par. 3—102.)

A municipality has a duty to reasonably maintain its streets for vehicular traffic (*Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215) and to reasonably maintain its crosswalks for pedestrians (see *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572; *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357). In *Mason*, the court observed:

"The law imposes no general duty on municipalities for the safeguarding of pedestrians when they are using public streets as walkways. *** The law is well settled, therefore, that a municipality owes no duty to a pedestrian crossing a public street outside of the crosswalk." (*Mason*, 173 Ill. App. 3d at 331-32.)

In *Risner*, the court stated: "[T]he street is for use by vehicular traffic—not pedestrians, except where defendant has provided crosswalks or the like." (Emphasis omitted.) *Risner*, 150 Ill. App. 3d at 831.

The Illinois appellate courts have addressed the issue of whether a municipality owes a pedestrian a duty of care in the maintenance of roadways in an increasing number of cases. (See *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590; *Risner*, 150 Ill. App. 3d 827, 502 N.E.2d 357; *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, 525 N.E.2d 242; *Mason*, 173 Ill. App. 3d 330, 527 N.E.2d 572; *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911, 556 N.E.2d 660; *Vance v. City of Chicago* (1990), 199 Ill. App. 3d 652, 557 N.E.2d 494; *Princivalli v. City of Chicago* (1990), 202 Ill. App. 3d 525, 559 N.E.2d 1190.) In fact, two more decisions involving the issue before this court have been released since the parties briefed the case at bar. See *Wojdyla v. City of Park Ridge* (1991), 209 Ill. App. 3d 290; *Greene v. City of Chicago* (1991), 209 Ill. App. 3d 311.

■ Plaintiff argues that she was the beneficiary of a duty at the time of her injury because, though her injury occurred at a point in the street not protected by a crosswalk, she was lawfully on the street per-

forming a lawful duty, and a defect in the street injured her while she was performing a socially desirable function. In support of this argument, plaintiff cites a number of cases which are clearly distinguishable from the case at bar.

First, plaintiff relies on the *Di Domenico* case. There, the Third District Appellate Court held that the municipality owed the pedestrian-plaintiff a duty of care, despite the fact that the injury occurred in an area of the street not protected by a crosswalk. In *Di Domenico*, the plaintiff fell into a hole on the street while approaching the trunk of his legally, curb-side parked automobile. Responding to the argument that streets (crosswalks excepted) need be maintained only for vehicular use, the court stated:

> "It defies common sense to conclude that such local entities did not contemplate and intend that the operator of the vehicle along with the passengers would use the street area around the parked vehicle for ingress and egress to and from their vehicle."

(*Di Domenico*, 171 Ill. App. 3d at 295-96.)

The *Di Domenico* court concluded that the plaintiff, legally parked, could maintain a cause of action. In explaining the *Di Domenico* holding, the *Vance* court stated "[the *Di Domenico* court] found that the village must have recognized a driver would have to walk in the street from his legally parked car to the sidewalk," and therefore the plaintiff benefitted from a duty. (*Vance*, 199 Ill. App. 3d at 654.) We note that the plaintiff in *Vance* was injured in the area of the street within which a Chicago Transit Authority bus was allowed to park (per ordinance) as she approached the bus. Clearly, such use of the street, like that in the instant case, was lawful. The *Vance* court, however, declined to impose a duty on the city.

*Di Domenico* is distinguishable from the case at bar. Assuming plaintiff here was injured in an area of the street where parking was allowed (the parties have not brought this factual matter to our attention and the record does not reveal whether parking was allowed where the injury occurred), the *Di Domenico* plaintiff was necessarily walking to her legally parked vehicle. Here, plaintiff was gratuitously cleaning the street.

Plaintiff also relies on the case of *Marshall v. City of Centralia* (1989), 193 Ill. App. 3d 334, 549 N.E.2d 652. There the plaintiff was injured when he stepped into an open manhole. The location of the manhole was on the parkway—"[a]t the time of the accident the plaintiff had not yet entered the street." (*Marshall*, 193 Ill. App. 3d at 336.) The court held that the plaintiff was indeed the beneficiary of a duty, but the duty ran because a municipality has a duty to maintain its

parkways in a reasonably safe condition considering the use of that property. (*Marshall*, 193 Ill. App. 3d at 338-39.) The injury in the case at bar is not one that involves the use of a parkway, and thus, *Marshall* is not persuasive to the issue before us.

Finally, plaintiff relies on *Princivalli*. There, the court reversed an entry of summary judgment entered in favor of the city where the entry of judgment was "premature," given the city's failure to establish that the pedestrian was not an intended and permitted user of the street. (*Princivalli*, 202 Ill. App. 3d at 528.) In *Princivalli*, the plaintiff legally parked her vehicle parallel to the curb, "alighted from her car, *** walked around the back end of the car and stepped off the curb into the street. As she was crossing the street, she accidentally stepped into a pothole." (202 Ill. App. 3d at 526.) While one may argue that *Princivalli* is an extension of *Di Domenico* (an argument we need not address), it is nonetheless distinguishable from the case at bar because the plaintiff there was walking from a legally parked vehicle.

Plaintiff argues that this case, like the *Princivalli* case, must be remanded for a determination of whether her use of the street was "foreseeable." Here, plaintiff's argument clearly puts the proverbial cart before the horse. The fact that plaintiff's use of the street may have been foreseeable does not compel a conclusion that a duty was owed plaintiff. Pursuant to the language of the Tort Immunity Act, foreseeability "pertains to *use* of the municipality's property by permitted and intended users, *not to foreseeable users* *** '*in a manner* *** *it was reasonably foreseeable it would be used.*'" (Emphasis in original.) (*Risner*, 150 Ill. App. 3d at 831.) While it is foreseeable that pedestrians will use the streets outside of crosswalks in a variety of manners, the pivotal inquiry is whether the municipality intends and permits pedestrians to use the property. We note that it is unlikely that the *Princivalli* opinion is a signal to extend a duty to anyone who is lawfully using the street. The same division in the recent case of *Greene v. City of Chicago* (1991), 209 Ill. App. 3d 311, recently held that a pedestrian injured in the street did not benefit from the duty *Di Domenico* imposes, as the *Greene* plaintiff was not walking to or from a legally parked vehicle, but rather was walking to a friend's house. The plaintiff in *Greene* was walking in an area of the street where parking was allowed, and the opinion does not give any indication that crossing in mid-block was prohibited by ordinance.

In arguing that she was an intended and permitted user of the street at the time of her injury, and thus the beneficiary of a duty, plaintiff emphasizes that there is no ordinance "prohibiting citizens *** from collecting garbage and/or debris which accumulates [in the

street]." Plaintiff goes so far as to assert that her actions at the time of her injury "would be encouraged by the City." We are not sure that municipalities do in fact "encourage" citizens to maintain their property in all instances. Plaintiff does, however, touch upon a point worth discussing when she asserts that the lack of ordinance prohibiting conduct is tantamount to an indication that an individual engaging in the unprohibited conduct is an intended and permitted user of the municipality's property.

We have recently held that an ordinance which does in fact prohibit a plaintiff from engaging in conduct may compel the result that the plaintiff is owed no duty under the Tort Immunity Act. (See *Prokes v. City of Chicago* (1991), 208 Ill. App. 3d 748.) We are unprepared, however, to hold that the mere lack of municipal prohibition suffices to impose a duty. While we agree that a municipality's failure to prohibit an individual from engaging in a given use of public property may well indicate that the plaintiff is "permitted" to use the property in the given manner, section 3—102(a) provides that no duty runs unless the plaintiff is an "intended and permitted" user of the property.

Our holding that to be the beneficiary of a duty with respect to use of municipal property one must be an intended *and* permitted user of the property is compelled by both the language of section 3—102(a) and the case law construing the statute. The statute provides that a duty runs to "people whom the entity intended *and* permitted to use the property." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 85, par. 3—102.) The word "intend" is defined as either "to have in mind as a specific purpose or goal" or "to design for a specified use or future." (Webster's Ninth New Collegiate Dictionary 629 (1989).) The word "permit" is defined as "to consent to expressly or formally," "to give leave," or "to make possible," and is synonymously cross-referenced as "allow." (Webster's Ninth New Collegiate Dictionary 876 (1989).) We are convinced that had the legislature chosen to subject municipalities to liability for either of these distinctive uses of municipal property, it would have used the conjunction "or" instead of the conjunction "and."

Additionally, we are unaware of any case law or other authority which suggests that a plaintiff benefits from a duty under section 3—102(a) if (s)he is either an intended or a permitted user of municipal property. To the contrary, we find implicit support in the case law that section 3—102(a) requires that the beneficiary of a duty be both an intended and permitted user of the property. In *Curtis*, our supreme court was faced with a claim by a passenger of an automobile. The plaintiff alleged that the county was negligent in allowing a sign to be

placed along the highway that motorists used to assist them in a form of drag racing. The *Curtis* plaintiff, in fact, was a passenger in an automobile that was drag racing at the time of the injury. In holding that the plaintiff was owed no duty, the court stated "[a]s a passenger in a speed-clocking automobile, [plaintiff] cannot be said to fall within the class of motorists by whom defendant's highways were intended to be used." (*Curtis*, 98 Ill. 2d at 165.) Given that the plaintiff in *Curtis* alleged that the governmental entity was negligent in allowing the sign to remain despite the entity's knowledge of constant and repeated use of the sign, the argument could be made that the activity was in some sense "permitted." The court's language in dismissing the cause of action, however, did not touch upon the issue of permission, but rather mentioned only that the plaintiff was not an intended user of the roadway. In *Deren*, the plaintiff specifically alleged that the city held the street out for pedestrian use and that such use of the street was regular. The court in *Deren*, in deciding the issue before it, was willing to concede that the city was aware of such use, and there is no discussion of any ordinance prohibiting pedestrian use of the roadway. Clearly, then, the *Deren* case involves pedestrian use of a roadway that was in some sense permitted. The *Deren* court, however, refused to impose a duty on the city. A reading of these cases suggests that one must not only be a permitted user, but must also be an intended user of municipal property to benefit from a municipality's duty of reasonable care with respect to that property.

Further, we do not think that a municipality must separately prohibit each and every potential foreseeable use of its property in order to assert that it owes no duty under section 3—102(a). In the context of pedestrian usage of streets, the potential foreseeable uses of the street are many. In sum, while prohibition of a given use of municipal property may well compel the result that the user is owed no duty, because of the disjunctive requirements of municipal intent and municipal permission, we hold that the lack of municipal prohibition of activity, alone, does not compel the result that a plaintiff is owed a duty under section 3—102(a).

Finally, assuming that plaintiff was a "permitted" user of the street at the time of her injury, due to the lack of prohibition of such use, we address whether plaintiff was an intended user of the street. As indicated, the general rule is that streets are for use by vehicular traffic—not pedestrians. To be sure, a number of exceptions have developed to this rule. (See *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205 (plaintiff was standing near or attending a disabled vehicle); compare *Householder v. City of Bunker Hill* (1988), 172

Ill. App. 3d 1037, 527 N.E.2d 528; *Di Domenico*, 171 Ill. App. 3d 293, 525 N.E.2d 242, and *Princivalli*, 202 Ill. App. 3d 525, 559 N.E.2d 1190 (plaintiff walking to or from a legally parked vehicle); but see *Vlahos*, 198 Ill. App. 3d 911, 556 N.E.2d 660, and *Mason*, 173 Ill. App. 3d 330, 527 N.E.2d 572; *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98 (plaintiff forced to walk in street because the city tore up the sidewalk on both sides of the street).) All of these cases, however, are distinguishable based upon the facts, and the reasons for these holdings appear to be bottomed upon the respective plaintiffs' necessary use of the roadways. This analysis is reinforced in that the recent *Greene* case held that no duty was owed a plaintiff who was crossing the street outside of a crosswalk en route to a friend's house. (*Greene*, 209 Ill. App. 3d at 313.) The facts of this case are unlike those cases which depart from the general rule, and the reasons for the holdings in those cases are absent from this case.

As we previously stated, we are not convinced that municipalities do in fact encourage individuals to take it upon themselves to clean their streets or sewers. We are convinced, however, that were such gratuitous actions to result in the imposition of liability upon the City, such use of municipal property would most definitely not be encouraged.

Finally, it is clear that if we were to adopt plaintiff's argument that any foreseeable, unprohibited pedestrian use of Illinois roadways is both intended and permitted, Illinois municipalities would be required to make all areas of all roadways safe for pedestrian travel. Given the absence of a legal basis for a duty owed plaintiff, we are disinclined to create one. Foreseeability alone does not govern the determination of whether a duty should be imposed. As our supreme court in *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, observed: "The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant, must also be taken into account." The magnitude of making all Illinois roadways safe for pedestrian travel along with the consequential costs would be astronomical indeed. We therefore refuse to impose such a duty upon municipalities.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and LaPORTA, JJ., concur.