DAVID TORRES, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (5th Division) No. 1—89—0400

Opinion filed July 26, 1991.

90

Fred I. Benjamin and Thomas C. Halterman, both of Benjamin & Shapiro, Ltd., of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff David Torres appeals from an order granting summary judgment in favor of defendant, the City of Chicago (City), in a negligence action alleging that the City failed to maintain its streets in a reasonably safe manner. We address the issue of whether the City owed a duty of care to the plaintiff.

The record reveals that on January 26, 1985, plaintiff parked his car in front of his sister's house at 2100 West Barry Street. Plaintiff exited his car on the street side and proceeded to the rear of the car to remove groceries from the trunk. As plaintiff stepped back from the trunk, he fell into a pothole and was injured.

Plaintiff filed a negligence action against the City. The City then filed a motion for summary judgment, asserting its lack of duty to the plaintiff. The circuit court granted the summary judgment motion, finding that the City had no duty to maintain its streets for a pedestrian using the street outside of a crosswalk.

To recover in a negligence action, a plaintiff must allege a duty owed to the plaintiff by a defendant, a breach of that duty and an injury proximately resulting from the breach. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.) Section 3—102(a) of the Local Governmental and Governmental Tort Immunity Act (Tort Immunity Act) sets forth the City's duty to maintain its property:

"[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the

use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used[.]" (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).) Whether the city owed plaintiff a duty of care is a question of law properly decided on a motion for summary judgment. *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572.

 It is well settled that a municipality owes no duty to a pedestrian crossing a public street outside of the crosswalk. (*Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357.) We find this rule inapplicable to the instant case since, here, plaintiff was not crossing the street in the middle of the block outside of the crosswalk, but was merely using the street area around his parked car to leave his car.

 We agree with plaintiff's contention that because the City permits parking on Barry Street, pedestrian use of the immediate area around the parked vehicle for ingress and egress to and from the vehicle was intended and permitted within the meaning of the Tort Immunity Act. In *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, 525 N.E.2d 242, a case virtually identical to the case at bar, the plaintiff after legally parking his car, walked on to the street to retrieve some items from his trunk and while doing so, fell into a pothole and injured himself. The court in *Di Domenico* stated:

> "It defies common sense to conclude that such local entities did not contemplate and intend that the operator of the vehicle along with passengers would use the street area around the parked vehicle for ingress and egress to and from their vehicle." (*Di Domenico*, 171 Ill. App. 3d at 295-96.)

Furthermore, the court noted that plaintiff had legally parked his car and had no alternative route available to him. Accordingly, the court concluded that the village must have recognized that a driver would have to walk in the street from his legally parked car to the sidewalk, and therefore, the village had a duty to drivers and passengers to maintain the area of the street where cars were allowed to park. *Di Domenico*, 171 Ill. App. 3d 295.

Likewise, in *Princivalli v. Chicago* (1990), 202 Ill. App. 3d 525, 559 N.E.2d 1190, the court found significant the fact that the plaintiff was injured after exiting from her legally parked car. The plaintiff in *Princivalli* lawfully parked her car parallel from the curb, with the driver's side of the car near the curb. She left the car, walked to the rear of the car, and stepped off the curb into the street. As she was crossing the street, she fell into a pothole and was injured. The court

reversed the summary judgment granted to the city, holding that the entry of summary judgment was "premature" given the city's failure to establish that plaintiff was not an intended and permitted user of the street and whether her use of the street was reasonably foreseeable. *Princivalli*, 202 Ill. App. 3d at 528.

■ Our supreme court has recently had the opportunity to evaluate the City's duty under the Tort Immunity Act. In *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 570 N.E.2d 315, the court found that the defendant's duty is limited by the language of the Tort Immunity Act and, therefore, whether the defendant owed the plaintiff a duty requires the court to determine whether the plaintiff was an intended and permitted user of the property. The plaintiff in *Marshall* was on his way to visit a friend when he noticed that the sidewalk on the other side of the street was so muddy that there was no clean path to walk on. Before entering the crosswalk, plaintiff decided to leave the sidewalk and walk out in the street to avoid getting mud on his tennis shoes. In doing so, plaintiff walked across a grass-covered-parkway between the sidewalk and street and, before he stepped into the street, he fell into an open manhole. (*Marshall*, 143 Ill. 2d at 4.) While the city conceded that pedestrians such as plaintiff are permitted to walk upon its parkways, it maintained that pedestrians are not intended to walk through the parkway since parkways are intended to be used as "an area of beautification for trees and so forth." (*Marshall*, 143 Ill. 2d at 6.) After declining to analogize this case to a jaywalking case, the *Marshall* court concluded that plaintiff was an intended and permitted user of the parkway because parkways, while beautifying the street, are also intended for the limited use of pedestrians. (*Marshall*, 143 Ill. 2d at 6.) In reaching this conclusion, the court noted:

> "While parkways are not constructed with the intention of accommodating the kind of pedestrian traffic that is commonly associated with sidewalks, parkways have historically been used by pedestrians in a number of limited instances: *i.e., to enter a car that is parked at the curb*; to retrieve mail from a mailbox; to reach a neighbor's house across the street; to board a bus; to stand on so that others can pass you on the sidewalk; to cut the lawn; to trim the shrubs; and to rake the leaves." (Emphasis added.) (*Marshall*, 143 Ill. 2d at 10.)

Thus the court concluded that "a city has no right to maintain anything in the nature of a pitfall, trap, snare or other like obstruction whereby the traveler, in yielding to the impulse of the average

person to cut across a corner in a hurry, may be injured." *Marshall,* 143 Ill. 2d at 11.

The City in the instant case relies on the same jaywalking cases that the court found inapplicable in *Marshall.* These cases are distinguishable from the case at bar in light of the fact that the plaintiff in each case was clearly not an intended or permitted user of the street. The respective plaintiffs were injured while either walking to their illegally parked cars, or while crossing mid-block, outside of the crosswalk, to the opposite side of the street. (See *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572 (plaintiff was not an intended and permitted user of the street where plaintiff was injured while walking across a residential street mid-block in order to reach her car across the street and plaintiff even admitted that she had been jaywalking); *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357 (plaintiff was not an intended and permitted user of the street since he had been jaywalking, attempting to cross a heavily traveled street in the middle of the block).) Since illegal parking and jaywalking are actions expressly prohibited by ordinance, it would be inconceivable to find that a plaintiff injured while engaging in behavior in violation of a municipal ordinance is an intended and permitted user of the street. See *Prokes v. City of Chicago* (1991), 208 Ill. App. 3d 748, 567 N.E.2d 592 (City owed no duty to an adult plaintiff riding a bicycle on the sidewalk, since a person in violation of an ordinance could not be considered a permitted user of the property).

We also find distinguishable the five appellate court cases which have been released since the instant case was briefed, addressing the issue of whether a municipality owes a duty of care to a pedestrian injured while walking on the street outside of the crosswalk. In *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911, 556 N.E.2d 660, the plaintiff was injured after stepping into a hole in the street, outside of a crosswalk, while walking to his illegally double-parked car. Thus, it is clear that the plaintiff in *Vlahos* was not a permitted and intended user of the street since he parked in a spot where parking was not lawfully permitted and the city obviously did not intend for cars to be parked illegally.

In *Vance v. City of Chicago* (1990), 199 Ill. App. 3d 652, 557 N.E.2d 494, plaintiff was injured when she fell into a pothole in the street, outside of the crosswalk, after leaving a Chicago Transit Authority (CTA) bus. In concluding that bus passengers were not intended and permitted users of the street, the court distinguished *Di Domenico* on the basis that there the village allowed parking in the

street, while here, the CTA was not specifically allowed to drop passengers off in the street.

Furthermore, the plaintiffs in *Wojdyla v. City of Park Ridge* (1991), 209 Ill. App. 3d 290, 568 N.E.2d 144, and *Greene v. City of Chicago* (1991), 209 Ill. App. 3d 311, 567 N.E.2d 1357, were not intended and permitted users of the street since the plaintiffs were injured while attempting to cross mid-block to the opposite side of the street. In *Wojdyla* the decedent was crossing a six-lane highway, while walking to his parked car when he was struck by an automobile. The court concluded that plaintiff was not an intended and permitted user of the street since decedent was fatally injured while attempting to cross, outside of the crosswalk, to the other side of the highway. Similarly, in *Greene*, the court concluded that plaintiff was not an intended and permitted user of the street since plaintiff was injured while he attempted to cross the street, outside of the crosswalk, not while en route to his vehicle, but while on the way to a friend's house.

Most recently, in *Ramirez v. City of Chicago* (1991), 212 Ill. App. 3d 751, 571 N.E.2d 822, plaintiff was injured as she stepped into the street while she was in the process of sweeping the street in front of her home. Plaintiff argued that she was the beneficiary of a duty at the time of her injury because, though her injury occurred at a point in the street not protected by a crosswalk, she was lawfully on the street performing a lawful duty, and she was performing a socially desirable function. The *Ramirez* court found that the plaintiff could not benefit from the duty *Di Domenico* imposes since the *Ramirez* plaintiff was not walking to her legally parked vehicle, but was gratuitously cleaning the street.

Accordingly, we conclude that the plaintiff in the instant case was an intended and permitted user of the street. There is absolutely no basis for distinguishing this case from *Di Domenico*. Plaintiff's use of the street was not in violation of any ordinance. He was an intended and permitted user of Barry Street by virtue of the fact that he parked in a legal space on Barry Street. The City, by allowing parallel parking and not designating the area as restricted for parking, clearly intended and permitted individuals the use of the area for parking. Consequently, use of the parking space logically entails pedestrian use of the adjacent areas in order to enter and exit the parked vehicle and such use of the street is therefore also intended and permitted and reasonably foreseeable. See *Wojdayla v. City of Park Ridge* (1991), 209 Ill. App. 3d 290, 560 N.E. 2d 144 (Egan, J., dissenting) (it would be manifestly unjust to find that the driver of the car that struck the decedent has a cause of action against the city for property

damage resulting from defective lighting, while finding that the slain pedestrian's estate would have no cause of action against the city).

Finally, we find that our conclusion is entirely consistent with the decision in *Marshall.* (*Marshall,* 143 Ill. 2d at 10.) The *Marshall* court noted that parkways, while beautifying the street, are also intended for other limited pedestrian uses such as gaining access to a car that is parked at the curb. Here, the street area outside of the crosswalk, while intended primarily for vehicular traffic, is also intended for the limited pedestrian use of entering or exiting a parked vehicle. Furthermore, the *Marshall* court found that the city owed a duty to the pedestrian notwithstanding the fact that the pedestrian had an alternative route available to him. In the instant case there was simply no way for the plaintiff to avoid stepping on the street area surrounding his car as he exited his car and retrieved items from his trunk.

■ This modest extension of a municipality's duty of care to reasonably maintain not only the crosswalks, but also those areas of the street used by a pedestrian while in the immediate zone of travel to and from his legally parked vehicle, will not subject it to open-ended liability thereby causing an unreasonable burden on municipal finances.

Consequently, for the reasons set forth above, we reverse the trial court's order which granted defendant's motion for summary judgment and remand this case for further proceedings.

Reversed and remanded.

LORENZ, P.J., concurs.

JUSTICE GORDON, dissenting:

Whether pedestrians injured while on public streets while leaving or approaching their parked vehicles may recover from a municipality has been the subject of increasing divergence among the districts and within the first district.

Cases which have denied such recovery include: *Wojdyla v. City of Park Ridge* (1991), 209 Ill. App. 3d 290, 568 N.E.2d 144 (but see dissent by Justice Egan); *Greene v. City of Chicago* (1991), 209 Ill. App. 3d 311, 567 N.E.2d 1357; *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911, 556 N.E.2d 660; and *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572. Cases which have refused to deny such recovery include *Princivalli v. City of Chicago* (1990), 202 Ill. App. 3d 525, 559 N.E.2d 1190, and *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, 525 N.E.2d 242.

While the majority opinion is thoughtful and well researched, I cannot accept its conclusions, which would distinguish between injuries sustained by a pedestrian parker in the immediate proximity of a parked vehicle while seeking access to its trunk and injuries sustained by the pedestrian at a greater distance from the vehicle while proceeding towards it or away from it. In either event it would impose a new and costly area of liability upon municipalities to pedestrians for street injuries outside of crosswalks, in the eventual complete erosion of the holding of this division in *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357. The duty of the municipality to maintain its streets for pedestrian use would now extend the full curbside length of all streets which permit public parking. The duty of the municipality to maintain its streets would not be limited to those conditions which present hazards to vehicles as is presently the case but to every type of defect which presents a risk to pedestrians as if on a sidewalk.

Furthermore, the tenuous demarcation between those who are injured while avoidably using the street and those unavoidably using the street cannot be long maintained either in concept or in practice. For example, what of a driver who is injured adjacent to his vehicle, as in this case, but unlike the facts in this instance not because he tries to reach his car trunk but because he sought to cross the street mid-block from his vehicle? What of a driver who can with some added effort leave his vehicle through the curbside passenger door, who nevertheless chooses to leave through his street-side door, and is injured as a result of a defect in the street? Is it really appropriate to permit recovery to a driver using the street rather than the sidewalk to reach his car trunk while denying recovery to one who crosses midblock on a quiet side street to reach his vehicle parked a short 20 feet across the roadway where the alternative route to his vehicle is to walk 300 feet to a crosswalk to cross the street and then walk back again?

These hypotheticals are merely examples of those questions which will undoubtedly challenge and breach the thin line being drawn here between parkers whose use of the street is unavoidable and those whose use is avoidable. Thus, for the reasons which are already expressed in *Vlahos v. City of Chicago* (1990), 198 Ill. App. 3d 911, I must respectfully dissent.