RUBY ROBERSON, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—92—3284

Opinion filed March 31, 1994.

Alan C. Mendelson, of Chicago (Helen Wong Mehok, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Frederick S. Rhine, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

Ruby Roberson filed a complaint against the City of Chicago (City) after she sustained injuries when she stepped into a hole located on a median strip. The City moved for summary judgment. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) On August 25, 1992, the trial court granted the City's motion for summary judgment. Roberson appeals this decision and we now affirm.

At the time of the accident, Roberson was employed at the Desi Hair Salon located at 2134 West 95th Street. Running in an east-west direction, 95th Street has four lanes of traffic. From pictures made part of the record, it is clear that a parking lane is on the south side of the street. At this part of 95th Street, eastbound and westbound traffic is divided by a median strip, which is planted with grass, trees and flowers.

At about 10 in the morning on July 18, 1990, Roberson parked her car in front of 2135 West 95th Street, located on the south side of the street. The car was parked almost directly across the street from the Desi Hair Salon and was about 50 feet from the intersection. To get to her place of employment, Roberson crossed 95th Street and stepped onto the median strip. During a deposition which she gave in connection with this case, Roberson explained that she did not walk to the intersection and cross at the crosswalk because there was a traffic jam at the corner. As she stepped onto the median strip, Roberson's leg went into a hole that Roberson estimated was approximately six inches wide and four feet deep. Her leg was cut by something jagged in the hole and the injury required six stitches.

The parties agree that the City of Chicago was responsible for maintaining this median strip. The record reflects that the City had

entered into a contract with the Illinois Department of Transportation by which the City agreed to maintain certain portions of certain streets. According to both of the parties, this portion of 95th Street was covered by the maintenance agreement.

Roberson filed a complaint against the City of Chicago, charging the City was negligent and seeking $15,000 in damages. The City filed a motion for summary judgment, and on August 25, 1992, the trial court granted the motion. Roberson appeals this decision, raising two issues for our consideration: (1) whether the trial court erred in determining that Roberson was not an intended and permitted user of the area in question; and (2) whether a duty arises on the part of the City of Chicago because it was under a contractual obligation to maintain the median strip. We now affirm the decision of the trial court.

This case was disposed of on a motion for summary judgment. Summary judgment is proper only where the pleadings, affidavits and depositions on record raise no genuine issue of material fact. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) Therefore, summary judgment is only proper if an issue can be resolved as a matter of law.

In her complaint, Roberson charged that the City was negligent in maintaining the median strip. To properly allege that another party has been negligent, a plaintiff must assert that the defendant owed a duty of care to this party, the defendant breached that duty of care and the plaintiff's injury was a result of that breach. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421, 592 N.E.2d 1098, 1100; *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162, 456 N.E.2d 116, 118.) "Whether or not the duty of care exists is a question of law to be determined by the court." (*Wojdyla*, 148 Ill. 2d at 421, 592 N.E.2d at 1100.) Therefore, on this summary judgment motion, we can properly consider whether a duty existed on the part of the City when Roberson was injured after stepping onto a median strip.

In determining whether a duty is owed to Roberson, we turn to the first issue raised in this appeal, namely, whether Roberson was an intended and permitted user of this median strip. The Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*) directs that the City only owes a duty to exercise reasonable care if Roberson was an intended and permitted user of the property. Section 3—102(a) of the Act reads as follows:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of

ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).

■ We first consider whether Roberson was an intended user of this median strip. To "intend" has been defined in this context as " 'to have in mind as a specific purpose or goal.' " (*Ramirez v. City of Chicago* (1991), 212 Ill. App. 3d 751, 756, 571 N.E.2d 822, 826, quoting Webster's Ninth New Collegiate Dictionary 876 (1989).) In analyzing this case, then, we must examine the purpose of this median strip and whether Roberson was using this property in conformity with that purpose.

To assist us in our analysis, we turn to *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098. In *Wojdyla*, the decedent was killed when he attempted to cross Busse Highway outside of the crosswalk. To reach its conclusion that the decedent was not an intended user of the highway, the court looked at the nature of the property itself. The court stated:

"To determine the intended use of the property involved here, we need look no further than the property itself. The roads are paved, marked and regulated by traffic signs and signals for the benefit of automobiles. Parking lanes are set out according to painted blocks on the pavement, signs or meters on the sidewalk or parkway, or painted markings on the curb. Pedestrian walkways are designated by painted crosswalks by design, and by intersections by custom. These are the indications of intended use." *Wojdyla*, 148 Ill. 2d at 426, 592 N.E.2d at 1103.

Keeping this analysis in mind, we now turn to an examination of the median strip involved in this case.

During her deposition, Roberson described the property on which she injured herself as a "median" in the middle of 95th Street, separating the north and south sides of the street. From pictures made part of this record, it appears that the median strip separates two lanes of eastbound traffic from two lanes of westbound traffic. Additionally, a parking lane is included on the south side of the street. In this case, "[t]hese are the indications of intended use."

A median strip is defined as "a paved or planted strip of ground dividing a highway into lanes according to direction of travel." (Webster's Third New International Dictionary 1402 (1986).) According to this definition, then, this median strip is a traffic control device

designed to divide eastbound and westbound traffic on 95th Street. Because the purpose of this median strip is to divide lanes of traffic, it would be unreasonable to allow pedestrians to use the dangerous area between lanes of traffic flowing in opposite directions. We conclude, therefore, that this median strip is not intended for pedestrian use.

Roberson characterizes this particular median strip as a "parkway median" strip because the property was planted with grass, trees and flowers. Then, Roberson appears to assert that the Illinois Supreme Court's ruling in *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 570 N.E.2d 315, should control our decision. In *Marshall*, the court found that the plaintiff, who had fallen on the parkway and was injured, was an intended user of that property. The parkway was identified as a grassy area which ran adjacent to sidewalks. This median strip differs from the parkway at issue in *Marshall* because the median strip is a small grassy piece of land between busy lanes of traffic and is not adjacent to any sidewalk. The important consideration here is not the name given to the property; it is instead the nature of the property. Because the median strip substantially differs in nature from the parkway discussed in *Marshall*, we decline to follow its holding.

We therefore find that Roberson was not an intended user of this median strip. We have no need to address the related issue of whether she was a permitted user of the median strip. In order for a duty to arise, Roberson must be both an intended and permitted user of the median strip. *Ramirez v. City of Chicago* (1991), 212 Ill. App. 3d 751, 756, 571 N.E.2d 822, 826.

■ The second issue which Roberson raises is whether the City owed a duty to this plaintiff because the City had signed an agreement to maintain the median strip.

The City of Chicago and the Illinois Department of Transportation entered into a maintenance agreement whereby the City agreed to "operate and maintain" certain portions of certain streets "in the best interests of the people of the State of Illinois." This particular median strip on which Roberson was injured was apparently included within the terms of that agreement.

After examining the contract between the City of Chicago and the Illinois Department of Transportation, we conclude that this agreement does not automatically mean that the City has a duty to exercise care to protect any pedestrian who uses this median strip. To reach this conclusion, we look to the reasoning employed by the appellate court when it was faced with a similar situation in *Wojdyla v. City of Park Ridge* (1991), 209 Ill. App. 3d 290, 568 N.E.2d 144,

*aff'd* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098.

Again, the factual basis of *Wojdyla* involved whether a plaintiff should recover from the City of Park Ridge after the plaintiff's decedent was killed when he attempted to cross Busse Highway outside of a crosswalk. In that case, the City of Park Ridge entered into an agreement with the Illinois Department of Transportation to " 'operate and maintain' the streets covered by the agreement 'in the best interests of the people of the State of Illinois.' " *Wojdyla*, 209 Ill. App. 3d at 292, 568 N.E.2d at 145.

The Illinois Supreme Court likewise acknowledged the existence of this contract. (*Wojdyla*, 148 Ill. 2d at 420, 592 N.E.2d at 1100.) Only the appellate court, however, explicitly examined whether the existence of this contract gave rise to liability. In reaching its conclusion that no duty should be found to exist because of this agreement, the court reasoned as follows:

> "Finally, plaintiff contends that the City assumed a duty to adequately light the highway for the benefit of her decedent when the City agreed with IDOT to maintain the street 'in the best interests of the people of the State of Illinois.' Plaintiff advances no case law or other authority to support the proposition that an agreement of this type would impose a duty owed to the decedent where no duty exists at the common law. The agreement says nothing about the city agreeing to provide lighting on Busse Highway for the benefit of pedestrians, and we hold that no duty should run based solely on the IDOT agreement." *Wojdyla*, 209 Ill. App. 3d at 297, 568 N.E.2d at 148.

The language which appears in the agreement between the City of Chicago and the Illinois Department of Transportation is the same language which appears in the contract discussed in *Wojdyla*. Like the agreement in *Wojdyla*, the agreement here states that the City has an obligation to "operate and maintain" the property covered by the agreement "in the best interests of the people of the State of Illinois." There is no mention of maintaining this property for pedestrians using the median. We therefore adopt the reasoning of the appellate court in *Wojdyla* and hold that no duty should run based solely on the City's agreement with the Illinois Department of Transportation. In so doing, we again note that the supreme court did not address this issue in its opinion.

Roberson also attempts to examine and interpret *Wojdyla*. Roberson argues that the appellate court in *Wojdyla* found that the agreement was not sufficiently explicit to require illumination in the area where the plaintiff was struck. Presumably, Roberson's

conclusion derives from the following language: "The agreement says nothing about the city agreeing to provide lighting ***." (*Wojdyla*, 209 Ill. App. 3d at 297, 568 N.E.2d at 148.) However, Roberson argues that, because the agreement in this case explicitly states that the City has an obligation to "mow, sweep, pick up litter and effectuate routine surface repairs," this agreement provides a sufficient basis for concluding that the City owed a duty to her.

We disagree with Roberson's conclusion. *Wojdyla* did not say that the contract did not sufficiently address whether the City had a responsibility to provide lighting, as Roberson contends. Rather, it specifically states that the agreement does not address the City's responsibility to provide lighting *for the benefit of pedestrians*. The distinction which Roberson attempts to draw is therefore invalid.

Roberson also argues that, because the City assumed the responsibility to maintain this property, the City should be found to have a duty to reasonably discharge this responsibility to protect the plaintiff. Without citation to any authority, Roberson further asserts that, because the City entered into an agreement to maintain property which it did not own, it lost its shield of immunity. Immunity was never an issue in this case, but even if it were, our disposition based on the duty analysis contained in *Wojdyla* effectively disposes of it.

The complaint against the City of Chicago was properly dismissed on the summary judgment motion. The decision of the trial court is therefore affirmed.

Affirmed.

CAHILL, P.J., and JOHNSON, J., concur.