**SISTEMAS URBANOS, INC., et al., Plaintiffs**

v.

**Angelino LUGO RAMOS, et al., Defendants.**

**Civil No. 03–1653 (JAG).**

United States District Court, D. Puerto Rico.

March 30, 2004.

Ruben T. Nigaglioni, Ruben T. Niga-glioni Law Offices, San Juan, PR, for Plaintiffs.

Ana M. Margarida–Julia, San Juan, PR, for Defendants.

**OPINION AND ORDER**

GARCIA–GREGORY, District Judge.

On June 12, 2003, Sistemas Urbanos, Inc. ("Sistemas") and the Municipality of Yauco ("Yauco") (collectively "Plaintiffs") filed suit against Angelino Lugo Ramos ("Lugo") in his personal and official capacity as Regional Director of the Department of Transportation and Public Works ("DTOP"), and Luis Trinidad Garay ("Trinidad") in his personal and official capacity as Executive Director of DTOP (collectively "Defendants"), for civil rights violations pursuant to 42 U.S.C. § 1983 and damages pursuant to article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (Docket No. 1). On that same date, Plaintiffs filed a motion requesting a temporary restraining order and a prelimi-nary injunction (Docket No. 2). On June 20, 2003, the Court denied the temporary restraining order and set a hearing on the Request for Preliminary Injunction. On the date set for the hearing, the parties met in Chambers. Defendants agreed not to remove any further street furniture equipment while the Court decided the preliminary injunction issue based on stip-ulated facts and supplemental briefs. On July 11, 2003, the parties submitted a joint stipulation of facts (Docket No. 11) and a joint filing of uncontested documents, pic-tures, and photographs (Docket No. 12). On July 18, 2003, both parties submitted supplemental briefs in support of their po-sitions (Docket Nos. 15 and 16). For the reasons discussed below, the Court **DE-NIES** the motion for preliminary injunc-tion.

**FACTUAL BACKGROUND**[1]

Sistemas is a corporation that engages in the advertisement industry through the installation of street furniture in the differ-

---

1. The facts of this case have been stipulated by the parties.

ent municipalities of the Commonwealth of Puerto Rico. Yauco, as a municipality of the Commonwealth, is empowered to administer, lease, or dispose of its public or patrimonial property. Pursuant to Ordinance 293 (2001–02), approved by the Municipal Assembly of Yauco, Plaintiffs subscribed a contract according to which Sistemas would donate and install certain street furniture equipment on sidewalks and other areas under Yauco's control. Yauco would lease those areas to Sistemas who would, in turn, commercially exploit the advertising space that forms part of the street furniture equipment.

Accordingly, Sistemas, with Yauco's authorization and consent, installed three information panels, a digital clock, and a thermometer on the median strip of road PR–128. PR–128 is a state road that crosses Yauco's urban area, connecting Yauco to the Municipalities of Guanica and Guayanilla. It is mostly a two lane road, with traffic flowing in both directions. The median strip, which runs parallel to the sidewalks, divides the lanes where traffic flows in opposite directions. In addition to a clearly marked easement for the use of crossing pedestrians, this median strip contains palm trees and flower beds.

Sistemas did not obtain DTOP's permission to install its street furniture on the median strip of PR–128. DTOP considered that said installation was illegal, so, on May 15, 2003, it forwarded a letter to Sistemas requesting the removal of the street furniture in question. Sistemas replied by letter dated May 21, 2003 denying that the structures were illegal. Sistemas and DTOP met on May 22, 2003 to discuss the installation of street furniture in the Municipality of Humacao. At this meeting, DTOP gave Sistemas a memorandum dated December 19, 1996 addressing the issue of right-of-ways in highways. This memorandum had been prepared in response to a situation created by a company other than Sistemas. Sistemas responded to this memorandum through a letter dated May 23, 2003. After this communication, on June 5, 2003, personnel from DTOP, under the direction and control of Lugo, removed the street furniture from PR–128's median strip. This removal was carried out without Yauco's or Sistemas' consent.

## DISCUSSION

### A. *The Standard for Preliminary Injunction*

■ An injunction has the effect of requiring a party either to do or refrain from doing something. "A preliminary injunction is effective *pendente lite* until a decision has been reached at a trial on the merits." 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d*, § 2941, at 33 (1995). The First Circuit has outlined four elements that a movant must demonstrate before preliminary injunctive relief may issue.

> A district court must weigh four factors: (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, i.e., the hardship to the nonmovant if the injunction issues as contrasted with the hardship to the movant if interim relief is withheld; and (4) the effect on the public interest of a grant or denial of the injunction.

*DeNovellis v. Shalala*, 135 F.3d 58, 62 (1st Cir.1998). *See also Gately v. Com. of Mass.*, 2 F.3d 1221, 1224 (1st Cir.1993); *Cohen v. Brown University*, 991 F.2d 888, 902 (1st Cir.1993); *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981)(*quoting Women's Community Health Ctr., Inc. v. Cohen*, 477 F.Supp. 542, 544 (D.Me.1979)).

Thus, the first step in the Court's inquiry is Plaintiffs' likelihood of success on the

merits of the case. Plaintiffs, in their brief in support of the request for a preliminary injunction, recognize that the main issue this Court needs to decide in order to solve the claim is who has control over the median strip of PR–128; that is, whether the median strip is part of the right-of-way of the roadway.

■ Plaintiffs contend that the median strip at issue is under Yauco's control, thus Yauco had a right to lease it to Sistemas who, in turn, had a contractual right to install its street furniture and exploit it commercially. In support of their claim, Plaintiffs rely on the law and jurisprudence of Puerto Rico in relation to sidewalks, alleging that this particular median strip has similar characteristics and function, and that, as such, this Court should afford it the same treatment.

The Puerto Rico law on construction and maintenance of roads gives DTOP jurisdiction over the maintenance of roads, while the municipalities retain jurisdiction over the sidewalks. 9 P.R. Laws Ann. § 13. The only exception to this principle is when a municipality formally declares to the Secretary of DTOP that it does not desire DTOP's intervention in the maintenance of a specific road or section. Only then will the municipality acquire jurisdiction over the road. 9 P.R. Laws Ann. § 15. Yauco has not alleged that it made

such a declaration or that it somehow retained control over the road. Instead, Plaintiffs argue that, according to the law, DTOP has jurisdiction over those parts of the roadway designed for vehicular travel and that, since the median was not designed for vehicular travel, Yauco retains jurisdiction over the median just as it retains jurisdiction over the sidewalks. Furthermore, Plaintiffs advance the theory that, since neither the laws nor the jurisprudence of the Supreme Court of Puerto Rico explicitly state who exercises control over the median strips, this Court should allocate control to Yauco using the statutes on sidewalk jurisdiction as an analogy.

An examination of the different laws and regulations on the subject, however, convinces this Court that such analogy is not necessary. According to the Puerto Rico law on vehicles and transit, a roadway will encompass the total width between the boundaries of the right-of-way open to the public for vehicular travel. 9 P.R. Laws Ann. § 5001(111). A median strip is the area located in the center of the right-of-way, separating the opposite directions of the traffic flow. 9 P.R. Laws Ann. § 5001(49). This Court is persuaded by the reasoning of the Michigan State Court of Appeals [2] when answering the question of whether a statute establishing a duty for highway repair included the repair of the median strip: [3]

---

2. Because the Puerto Rico Supreme Court has not addressed the subject, this Court turned to similar statutes in different states only to find out that median strips have been afforded the same treatment we afford them here. Most of the cases that address the subject do so in the context of responsibility for damages as a consequence of accidents in or near the median strips. This Court is aware that some state courts address the inquiry of control over the median strip by analyzing the entity in charge of its repair and maintenance. *See City of Tamarac v. Garchar,* 398 So.2d 889 (Fla.App.1981). The decision not to follow this line of inquiry is due to the fact that in these tort cases the

main issue was to determine which entity was negligent in the furtherance of its responsibilities. This is not the question on the present case. Rather, this Court has to determine mere ownership over the median strip in order to determine who *may* exercise this duty of maintenance.

3. The statute in question read in relevant part:

"The duty of the state and the county road commissions to repair and maintain highways, and liability therefor, extends only to the improved portion of the highway designed for vehicular travel and does not

Obviously the median was not designed for vehicular travel.... But in construing the statute we simply can't read out the words 'improved portion' even though those words are modified and limited by the phrase 'designed for vehicular travel'. A highway is composite of many components.... The median did not magically appear between the paved portions of the divided highway.... We cannot but conclude that it is an 'improved portion' in the same sense the shoulders [are]....

*Detroit Bank and Trust Co. v. State of Michigan,* 55 Mich.App. 131, 222 N.W.2d 59, 61 (1974). This Court, just as the Michigan Court of Appeals, is of the opinion that the mere fact that the median strip is not intended for vehicular travel in no way translates into a rescission of the characteristics that make it an inherent component of the roadway. Moreover, the DTOP, in its regulations, has explicitly defined the roadway as including the median strip. *See* DTOP Regulations Nos. 2100 and 3836. These provisions weigh in favor of treating the median strip as part of the roadway. Even if, as Plaintiffs assert, the median strip in question functions as a sidewalk because it has an easement for pedestrian use, the DTOP regulations reflect that the median strip's main purpose is to direct or channelize the traffic flow. In other words, they serve as a

traffic control device. *DTOP* Regulation No. 2100.

The examined caselaw further supports this view. For example, Pennsylvania's definitions of both highway and median are very similar to the definitions in the Puerto Rican law.[4] While allocating responsibility for an accident on a defective median, the Commonwealth Court of Pennsylvania interpreted these definitions and stated: "[c]learly, a median is between the boundary lines of a highway, and by definition, a portion thereof." *Slough v. City of Philadelphia,* 686 A.2d 62, 64 (Pa. Cmwlth.1996). *See also Morton v. Penn. DOT,* 62 Pa. D. & C.4th 266, 276 (2003). Similarly, the Appellate Court of Illinois, when analyzing comparable language and the function of a median strip as it appeared from photographs, stated that it was a traffic control device. *See Roberson v. City of Chicago,* 260 Ill.App.3d 994, 201 Ill.Dec. 344, 636 N.E.2d 776, 778 (1994).[5]

This Court agrees with the Commonwealth Court of Pennsylvania in that a median strip, as defined by law, is a portion of the right-of-way that constitutes a roadway. The definitions of median strip and roadway in the laws of Puerto Rico, when read as a whole, support this conclusion. Moreover, it is this Court's opinion that the Appellate Court of Illinois accurately described a median strip as a traffic control device, seeing that its purpose was

---

include sidewalks, trailways, crosswalks, or other *installation outside of the improved portion of the highway designed for vehicular travel.*" Mich. Comp. Laws § 691.1402 (2003).

**4.** "Highway: The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." 75 Pa. Cons.Stat. Ann. § 102 (West, 2004); 67 Pa.Code § 211.1 (1982).

"Median: The portion of a divided highway separating the traveled ways for traffic in

opposite directions." 67 Pa.Code § 211.1 (1982).

**5.** "From pictures made part of this record, it appears that the median strip separates two lanes of eastbound traffic from two lanes of westbound traffic.... A median strip is defined as 'a paved or planted strip of ground dividing a highway into lanes according to direction of travel.' (Webster Third New International Dictionary 1402 (1981).) According to this definition, then, this median strip is a traffic control device designed to divide eastbound and westbound traffic on 95th Street."

to divide traffic flow. The photographs jointly offered as exhibits (Docket No. 12) as well as the definitions given by DTOP's regulations, clearly establish that the main purpose of this particular median strip is to divide the traffic flowing in opposite directions along PR–128. Thus, the median serves as a traffic control device at least in a general way. Having found that the law establishes that a median strip is part of the right-of-way which comprises a roadway and that the median strip in question serves as a traffic control device, this median strip must be part of the right-of-way of PR–128. Accordingly, since PR–128 is under DTOP's control, the median strip must be as well.

As stated above, the issuance of a preliminary injunction hinges upon the answer as to who has ownership or control over the median strip in question. The answer to that question weighs heavily on whether the removal of the urban furniture was lawful or illegal. The previous analysis shows that since the median strip located in PR–128 is a portion thereof, it is under DTOP's control. Thus, DTOP could lawfully remove the urban furniture equipment placed on this particular median strip.

Therefore, the Court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits of the case. Because "a movant's likelihood of success at trial is particularly influential in the preliminary injunction calculus[,]" *Cohen*, 991 F.2d at 903, this Court finds it unnecessary to continue its analysis of the standard for granting a preliminary injunction.[6] The preliminary injunction must be denied.

---

6. Even if, for argument's sake, this Court were to consider that Plaintiffs have demonstrated a likelihood of success on the merits, it would not have completed the entire inquiry regarding the standard for preliminary in-

junction because Plaintiffs have failed to make a sufficient showing that they would suffer irreparable harm if the preliminary injunction is denied.

## CONCLUSION

For the foregoing reasons, this Court **DENIES** Plaintiffs motion for preliminary injunction.

IT IS SO ORDERED.